Filed 6/27/23  In re Isaiah G. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| In re ISAIAH G., JR., a Person Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES, | F085565 |
| Plaintiff and Respondent, | (Super. Ct. No. 21CEJ300274-1) |
| v. | **OPINION** |
| ISAIAH G., | |
| Defendant and Appellant. | |

<u>**THE COURT**</u>[*]

APPEAL from an order of the Superior Court of Fresno County.  Elizabeth Egan, Judge.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Ashley N. McGuire, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Franson, Acting P. J., Smith, J. and Snauffer, J.

# INTRODUCTION

S.A. (mother) and Isaiah G. (father) are the parents of son Isaiah G., Jr. (born February 2021) (the child). Father appeals from the juvenile court's order terminating his parental rights pursuant to Welfare and Institutions Code section 366.26.[1] He contends the Fresno County Department of Social Services (department) and the juvenile court failed to comply with the inquiry requirements of the Indian Child Welfare Act (25 U.S.C. § 1901 et seq.) (ICWA) and related California law because certain extended family members were not asked about the child's possible Indian ancestry.[2] The department concedes error occurred at initial inquiry, but argues the error was not prejudicial as neither parent gave reason to believe or know the child is an Indian child. Alternatively, the department agrees to a limited remand for compliance with ICWA.

For the reasons discussed herein, we accept the department's concession of ICWA error. Consistent with our decisions in *In re K.H.* (2022) 84 Cal.App.5th 566 (*K.H.*) and *In re E.C.* (2022) 85 Cal.App.5th 123 (*E.C.*), we conclude "the error is prejudicial because neither the [department] nor the court gathered information sufficient to ensure a reliable finding that ICWA does not apply and remanding for an adequate inquiry in the first instance is the only meaningful way to safeguard the rights at issue. ([*In re A.R.* (2021)] 11 Cal.5th [234,] 252–254 [(*A.R.*)].) Accordingly, we conditionally reverse the juvenile court's finding that ICWA does not apply and remand for further proceedings consistent with this opinion, as set forth herein." (*K.H.*, at p. 591; accord, *E.C.*, at pp. 157–158.)

---

[1]     All further statutory references are to the Welfare and Institutions Code.

[2]     "[B]ecause ICWA uses the term 'Indian,' we do the same for consistency, even though we recognize that other terms, such as 'Native American' or 'indigenous,' are preferred by many." (*In re Benjamin M.* (2021) 70 Cal.App.5th 735, 739, fn. 1.)

## FACTUAL AND PROCEDURAL BACKGROUND[3]

### *Referral and Petition*

In July 2021, the department received a referral on behalf of the then five-month-old child alleging general neglect by mother because she had left him with paternal grandmother Maria G. for two months. The child was placed on a section 300 hold. Social workers interviewed mother, maternal grandmother Lucille R., and paternal grandmother as part of their investigation. Thereafter, the department conducted a team decision making meeting in which maternal grandmother, paternal great-grandmother Deborah S., and maternal grandfather Alphonso R. participated.[4] The department determined the child would remain in out-of-home placement and a petition would be filed. Father was incarcerated at the time, but was interviewed and denied having Indian ancestry. Paternal grandmother also denied having Indian ancestry.

On July 27, 2021, the department filed a petition on behalf of the child pursuant to section 300, subdivision (b)(1). Father was listed as an alleged father. The petition contained an "INDIAN CHILD INQUIRY ATTACHMENT" (ICWA-010(A)) form stating mother and paternal grandmother gave no reason to believe the child was or could be an Indian child.

### *Detention*

The detention report stated ICWA did not apply. Mother, father, and paternal grandmother had reported they did not have Indian ancestry. Mother reported paternal great-aunt Elizabeth C. and maternal aunt Danielle R. were interested in placement and provided their contact information.

---

**3** Because the sole issue on appeal concerns ICWA, we restrict our facts to those bearing on that issue or helpful for clarity.

**4** Maternal grandfather Alphonso is once referred to as maternal stepgrandfather elsewhere in the record. Thus, his relation to the child is not entirely certain.

On July 28, 2021, the juvenile court held a detention hearing and conducted inquiries with mother and father.[5] The court found a prima facie case had been established, ordered the child detained, ordered mother be offered reunification services, and set a combined jurisdiction and disposition hearing.

### *Jurisdiction and Disposition*

The jurisdiction and disposition report stated ICWA did not apply. It reiterated mother, father, and paternal grandmother had reported they did not have Indian ancestry. The child had been placed with Danielle. Maternal grandfather had contacted the department and requested placement information.

On August 25, 2021, the juvenile court held a combined jurisdiction and disposition hearing. The court ordered father to participate in a DNA test. The court set a settlement conference and set the matter for contest.

On September 15, 2021, at the settlement conference, the juvenile court found ICWA did not apply. The contested hearing was vacated. The court found the allegations true, adjudged the child a dependent of the court, ordered mother to participate in reunification services, and denied father reunification services due to his alleged father status. The court set a six-month status review hearing.

### *Six-Month Status Review*

The six-month status review report stated ICWA did not apply. The child was still in placement with Danielle. Maternal grandmother and maternal "step-grandfather" (who was referred to as maternal grandfather everywhere else in the record) were also interested in placement, but were not approved. Paternal cousin Ashlee D. also expressed interest in placement and was provided with information. During this review period, the

---

[5]    The minute order does not reflect the outcome of the court's inquiry and the record does not include a transcript of the detention hearing.

department conducted two child and family team meetings in which Danielle, maternal grandfather, maternal grandmother, and paternal grandmother participated.

On March 9, 2022, the juvenile court held a six-month status review hearing and elevated father's status to biological father and set the matter for contest.

On May 11, 2022, the juvenile court held a contested six-month status review hearing, terminated mother's reunification services, and set a section 366.26 hearing.

**Request to Change Court Order**

On July 11, 2022, father filed a "Request to Change Court Order" (JV-180) pursuant to section 388 requesting to be provided with reunification services as his status had been elevated to biological father.

On August 17, 2022, the juvenile court held a section 388 hearing at which maternal grandfather and Danielle were present. The court denied the JV-180.

**Section 366.26**

The section 366.26 report stated ICWA did not apply. The department had inquired of mother and father twice, and both times they denied having Indian ancestry. Paternal grandmother and paternal great-grandmother Deborah S. also denied having Indian ancestry. The department requested the juvenile court continue to find ICWA inapplicable. The child remained in placement with Danielle, who was willing to provide a permanent plan of adoption for him.

On August 31, 2022, the juvenile court held a section 366.26 hearing. Danielle and maternal grandfather were present. The court set the matter for contest.

On November 9, 2022, the juvenile court held a contested section 366.26 hearing. Danielle, maternal grandfather, and maternal grandmother were present. The court terminated parental rights and selected adoption as the permanent plan.

**Request to Change Court Order**

On November 23, 2022, father filed a JV-180 requesting the juvenile court change the order terminating parental rights, which the court denied.

On January 9, 2023, father filed a notice of appeal.

## DISCUSSION

I. **ICWA**

   A.    **Legal Principles**

" 'ICWA is a federal law giving Indian tribes concurrent jurisdiction over state court child custody proceedings that involve Indian children living off of a reservation' [citations], in furtherance of 'federal policy " 'that, where possible, an Indian child should remain in the Indian community' " ' [citations]. 'ICWA establishes minimum federal standards, both procedural and substantive, governing the removal of Indian children from their families' [citations], and '[w]hen ICWA applies, the Indian tribe has a right to intervene in or exercise jurisdiction over the proceeding.' " (*K.H.*, *supra*, 84 Cal.App.5th 566, 594, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 138, fn. omitted.)

" 'In 2006, California adopted various procedural and substantive provisions of ICWA.' [Citations.] The Legislature's 'primary objective … was to *increase* compliance with ICWA. California Indian Legal Services (CILS), a proponent of the bill, observed that courts and county agencies still had difficulty complying with ICWA 25 years after its enactment, and CILS believed codification of [ICWA's] requirements into state law would help alleviate the problem. [Citation.]' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 595; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 138–139.)

" 'In 2016, new federal regulations were adopted concerning ICWA compliance. [Citation.] Following the enactment of the federal regulations, California made conforming amendments to its statutes, including portions of the Welfare and Institutions Code related to ICWA notice and inquiry requirements. [Citations.] Those changes became effective January 1, 2019 ….' [Citation.] Subsequently, the Legislature amended section 224.2, subdivision (e), to define 'reason to believe,' effective September 18, 2020." (*K.H.*, *supra*, 84 Cal.App.5th at pp. 595–596, fn. omitted; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 139.)

### 1. Summary of Duties of Inquiry and Notice

"[W]hether a child is a member, or is eligible for membership, in a particular tribe is a determination that rests exclusively with the tribe, and neither the [department] nor the court plays any role in making that determination. [Citations.] ' "Because it typically is not self-evident whether a child is an Indian child, both federal and state law mandate certain inquiries to be made in each case." ' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 596; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 139–140.)

"In California, section 224.2 'codifies and elaborates on ICWA's requirements of notice to a child's parents or legal guardian, Indian custodian, and Indian tribe, and to the [Bureau of Indian Affairs].' " (*In re A.R.* (2022) 77 Cal.App.5th 197, 204.) California law imposes "an affirmative and continuing duty [on the court and the county welfare department] to inquire whether a child for whom a petition under [s]ection 300, … may be or has been filed, is or may be an Indian child." (§ 224.2, subd. (a).)

"The [state law] duty to inquire begins with the initial contact, including, but not limited to, asking the party reporting child abuse or neglect whether the party has any information that the child may be an Indian child." (§ 224.2, subd. (a).) "If a child is placed into the temporary custody of a county welfare department pursuant to [s]ection 306 … the county welfare department … has a duty to inquire whether that child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Additionally, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).)

"If the initial inquiry provides 'reason to believe' that an Indian child is involved in a proceeding—that is, if the court or social worker 'has information suggesting that either the parent of the child or the child is a member or may be eligible for membership in an Indian tribe'—then the court or social worker 'shall make further inquiry' regarding the child's possible Indian status as soon as practicable." (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 999 (*Ezequiel G.*), citing § 224.2, subd. (e).) "Further inquiry 'includes, but is not limited to, all of the following: [¶] (A) Interviewing the parents, Indian custodian, and extended family members[;] [¶] (B) Contacting the Bureau of Indian Affairs and the State Department of Social Services[; and] [¶] (C) Contacting the tribe or tribes and any other person that may reasonably be expected to have information regarding the child's membership, citizenship status, or eligibility.' " (*Ezequiel G.*, at p. 999.)

"If there is 'reason to know' a child is an Indian child, the [department] shall provide notice to the relevant tribes and agencies in accordance with section 224.3, subdivision (a)(5)." (*Ezequiel G.*, *supra*, 81 Cal.App.5th at p. 999, citing § 224.2, subd. (f).) "There is 'reason to know' a child is an Indian child if any one of six statutory criteria is met—i.e., if the court is advised that the child 'is an Indian child,' the child's or parent's residence is on a reservation, the child is or has been a ward of a tribal court, or either parent or the child possess an identification card indicating membership or citizenship in an Indian tribe." (*Ezequiel G.*, at p. 999, citing § 224.2, subd. (d).)

County welfare departments "must on an ongoing basis include in its filings a detailed description of all inquiries, and further inquiries it has undertaken, and all information received pertaining to the child's Indian status, as well as evidence of how and when this information was provided to the relevant tribes. Whenever new

information is received, that information must be expeditiously provided to the tribes."
(Cal. Rules of Court, rule 5.481(a)(5).)[6]

## B. Standard of Review

"The juvenile court's finding that ICWA does not apply to the proceeding rests on two elemental determinations, 'subject to reversal based on sufficiency of the evidence.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 142–143.) First, "[t]he court must find there is 'no reason to know whether the child is an Indian child,' which is dependent upon whether any of the six circumstances set forth in subdivision (d) of section 224.2 apply." (*K.H.*, at p. 601, quoting § 224.2, subd. (i)(2); accord, *E.C.*, at p. 143.) Second, "[t]he juvenile court must … find a 'proper and adequate further inquiry and due diligence .…' " (*Ibid.*)

Under the substantial evidence standard, " 'a reviewing court should "not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." [Citation.] The determinations should "be upheld if … supported by substantial evidence, even though substantial evidence to the contrary also exists and the trial court might have reached a different result had it believed other evidence." ' [Citations.] The standard recognizes that '[t]rial courts "generally are in a better position to evaluate and weigh the evidence" than appellate courts' [citation], and 'an appellate court should accept a trial court's factual findings if they are reasonable and supported by substantial evidence in the record' [citation]. '[I]f a court holds an evidentiary hearing, it may make credibility determinations, to which an appellate court would generally defer.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 601; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 143.)

The juvenile court's finding on the second element, however, "is ultimately discretionary because it requires the juvenile court to 'engage in a delicate balancing of' various factors in assessing whether the [department's] inquiry was proper and adequate

---

**6** All further references to rules are to the California Rules of Court.

within the context of ICWA and California law, and whether the [department] acted with due diligence." (*K.H.*, *supra*, 84 Cal.App.5th at p. 601.) Therefore, we employ a hybrid standard and review the court's determination for substantial evidence and abuse of discretion. (*Ibid.*)

" 'Review for abuse of discretion is subtly different [from review for substantial evidence], focused not primarily on the evidence but the application of a legal standard. A court abuses its discretion only when " ' "the trial court has exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " [Citation.] But " ' "[w]hen two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court" ' " [Citations.] [¶] While each standard here fits a distinct type of determination under review, the practical difference between the standards is not likely to be very pronounced.' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 143–144.)

"Review of the juvenile court's findings under the foregoing standards is deferential, but ' "an appellate court [nevertheless] exercises its independent judgment to determine whether the facts satisfy the rule of law." ' [Citations.] Where the material facts are undisputed, courts have applied independent review to determine whether ICWA's requirements were satisfied." (*K.H.*, *supra*, 84 Cal.App.5th at p. 602; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 144.)

### C.    Analysis

#### 1.    Summary of ICWA Inquiry

In the present case, the department conducted inquiries with mother, father, paternal grandmother, and paternal great-grandmother, who all denied having Indian ancestry. The juvenile court appears to have inquired of mother and father at the detention hearing, but the outcome of the inquiry is unknown as the minute order does not reflect their answers and the record does not contain a transcript of the hearing. The

record shows the department was in contact with several other family members at team decision making and child and family team meetings and for placement purposes including, maternal aunt Danielle, maternal grandmother, maternal grandfather, paternal great-aunt Elizabeth, and paternal cousin Ashlee. Additionally, Danielle had placement of the child for nearly the entire proceedings. Danielle, maternal grandfather, and maternal grandmother also attended various hearings. However, the record does not show that either the department or the juvenile court asked these family members about the child's Indian status. Nevertheless, the court found ICWA did not apply.

In *K.H.* and *E.C.*, we addressed ICWA error at the inquiry stage. There, we explained our decision not to follow the approaches articulated by other appellate courts for determining whether ICWA error requires reversal and concluded that the Supreme Court's decision in *A.R.* supplies the appropriate framework for assessing prejudice in this context. (*K.H.*, *supra*, 84 Cal.App.5th at pp. 607–608, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 152.) Applying the standards we articulated in *K.H.* and *E.C.*, as we will discuss below, we conclude that the department's error is prejudicial and remand for the department to conduct a proper, adequate, and duly diligent inquiry is necessary.

## 2. Department and Juvenile Court Erred

As previously mentioned, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child. The court shall instruct the parties to inform the court if they subsequently receive information that provides reason to know the child is an Indian child." (§ 224.2, subd. (c).) Moreover, when "a child is placed into the temporary custody of a county welfare department …, the county welfare department … has a duty to inquire whether [the] child is an Indian child. Inquiry includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or

11.

neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled." (§ 224.2, subd. (b).) Extended family members include adult grandparents, siblings, brothers- or sisters-in-law, aunts, uncles, nieces, nephews, and first or second cousins. (25 U.S.C. § 1903(2); § 224.1, subd. (c).)

Here, the department inquired only of mother, father, paternal grandmother, and paternal great-grandmother, when there were various other family members, including maternal family members, it could have inquired of. This fell short of complying with the plain language of section 224.2, subdivision (b), which required the department to inquire of extended family members. There may be cases in which there is no one else to ask, but if that is so, the record must be developed to reflect that fact and supported by documentation. (Rule 5.481(a)(5).) "On a well-developed record, the court has relatively broad discretion [in such cases] to determine [that] the [department's] inquiry was proper, adequate, and duly diligent on the specific facts of the case." (*K.H.*, *supra*, 84 Cal.App.5th at p. 589; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 157.) Accordingly, the juvenile court's finding that ICWA did not apply was not supported by substantial evidence, and its contrary conclusion was an abuse of discretion. (§ 224.2, subd. (i)(2).)

Further, we note rule 5.481(a)(2)(C) requires the court to order the parent, if available, to complete a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form. However, the record here does not contain any ICWA-020 forms.

### 3. Prejudice

"Where, as here, the deficiency lies with the [department's] duty of […] inquiry and a juvenile court's related finding of 'proper and adequate further inquiry and due diligence' (§ 224.2, subd. (i)(2)), the error is one of state law ([*In re*] *Benjamin M.*, *supra*, 70 Cal.App.5th at p. 742). Under the California Constitution, '[n]o judgment shall be set aside, or new trial granted, in any cause, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of

12.

the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice.' (Cal. Const., art. VI, § 13.)" (*K.H.*, *supra*, 84 Cal.App.5th at p. 606; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 151.)

" '[T]o be entitled to relief on appeal from an alleged abuse of discretion, it must clearly appear the resulting injury is sufficiently grave to manifest a miscarriage of justice' [citations], and California law generally interprets its constitutional miscarriage of justice requirement 'as permitting reversal only if the reviewing court finds it reasonably probable the result would have been more favorable to the appealing party but for the error.' " (*K.H.*, *supra*, 84 Cal.App.5th at pp. 606–607; accord, *E.C.*, *supra*, 85 Cal.App.5th at pp. 151–152.)

However, in *A.R.*, the Supreme Court "recognized that while we generally apply a *Watson*[7] likelihood-of-success test to assess prejudice, a merits-based outcome-focused test is not always appropriate because it cannot always adequately measure the relevant harm. [Citation.] In other words, where the injury caused by the error is unrelated to an outcome on the merits, tethering the showing of prejudice to such an outcome misplaces the measure, at the expense of the rights the law in question was designed to protect." (*K.H.*, *supra*, 84 Cal.App.5th at p. 609, italics omitted.)

As we explained in *K.H.*, " 'ICWA compliance presents a unique situation ….' " (*K.H.*, *supra*, 84 Cal.App.5th at p. 608.) "ICWA is not directed at reaching, or protecting, a specific outcome on the merits." (*Id*. at p. 609; accord, *E.C.*, *supra*, 85 Cal.App.5th at p. 154.) Rather, " '[t]he purpose of ICWA and related California statutes is to provide notice to the tribe sufficient to allow it to determine whether the child is an Indian child, and whether the tribe wishes to intervene in the proceedings' [citation], and an adequate initial inquiry facilitates the information gathering upon which the court's ICWA determination will rest." (*K.H.*, at p. 608; accord, *E.C.*, at pp. 152–153.) Yet,

---

**7**     *People v. Watson* (1956) 46 Cal.2d 818, 836.

"while the appealing party is usually a parent, parents do not bear the burden of gathering information in compliance with ICWA [citations], and parents may raise the claim of error for the first time on appeal." (*K.H.*, at p. 608; accord, *E.C.*, at p. 153.) Further, the ultimate determination whether a child is an Indian child rests with the tribe, not with a parent, the department, or the juvenile court. (*K.H.*, at p. 590; accord, *E.C.*, at pp. 139–140.) "[W]here the opportunity to gather the relevant information critical to determining whether the child is or may be an Indian child is lost because there has not been adequate inquiry and due diligence, reversal for correction is generally the only effective safeguard." (*K.H.*, at p. 610, citing *A.R.*, *supra*, 11 Cal.5th at pp. 252–254; accord, *E.C.*, at p. 155.)

Here, the department's inquiry, limited only to mother, father, and two paternal family members, " 'fell well short of that required to gather the information needed to meaningfully safeguard the rights of the tribes, as intended under ICWA and California law' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 156, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 620), and "[a] finding of harmlessness on this record would necessarily require speculation and 'is at odds with the statutory protections that ICWA and California law intend to afford Indian children and Indian tribes.' " (*E.C.*, at p. 155, quoting *K.H.*, at p. 611.) Therefore, the error is prejudicial and reversal is required.

Accordingly, the juvenile court's finding that ICWA does not apply is conditionally reversed and the matter is remanded. The juvenile court is instructed to ensure the department conducts " 'a proper, adequate, and duly diligent inquiry under section 224.2, subdivision (b), and document its inquiry in the record in compliance with rule 5.481(a)(5).' " (*E.C.*, *supra*, 85 Cal.App.5th at p. 157, quoting *K.H.*, *supra*, 84 Cal.App.5th at p. 621.) " 'This should not be interpreted as requiring an exhaustive search for and questioning of every living relative of [I.G.]' but '[w]e leave that determination for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the [d]epartment. So long as the court ensures the

14.

inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding.  (§ 224.2, subd. (i)(2).)' "  (*Ibid.*)

## DISPOSITION

The juvenile court's finding that ICWA does not apply is conditionally reversed, and the matter is remanded to the juvenile court with directions to order the department to comply with the inquiry and documentation provisions set forth in section 224.2, subdivision (b), and rules 5.481(a)(5) and 5.481(a)(2)(C).  The juvenile court is directed to comply with the inquiry provisions of section 224.2, subdivision (c).  If, after determining that an adequate inquiry was made consistent with the reasoning in this opinion, the court finds that ICWA applies, the court shall vacate its existing order and proceed in compliance with ICWA and related California law.  If the court instead finds that ICWA does not apply, its ICWA finding shall be reinstated.  In all other respects, the juvenile court's order is affirmed.